

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**FRANK A. CATALANO,**

**Plaintiff,**

**v.**

**REPORT AND RECOMMENDATION**
**04-CV-389**

**MARIA LEHMAN, Commissioner of Public Works, DAVID BOEHM, Erie County Senior Highway Engineer, GERRY SENTZ, Erie County Director-Energy, Utility and Grant Management, and ERIE COUNTY, NEW YORK,**

**Defendants.**

**Preliminary Statement**

Presently before the Court is defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c). (Docket #14). In his complaint, plaintiff alleges that while he was employed by the Erie County Highway Department, defendants denied him his rights under the First Amendment, in violation of 42 U.S.C. § 1983 and defamed him under New York State law. (Docket #1). By Order of Judge Richard J. Arcara, dated November 14, 2006, all dispositive motions have been referred to me pursuant to 28 U.S.C. §636(b)(1)(A)-(B) for a Report and Recommendation. (Docket #22). The following is my Report and Recommendation as to defendants' motion to dismiss.

**Relevant Facts**

Plaintiff began working for the Erie County Highway Department as a laborer in 1985. See Complaint at ¶ 10 (Docket #1). In the summer of 2001, he was promoted to Temporary Foreman at the East Aurora Highway Barn. Id. at ¶ 11. At that time, plaintiff's supervisors included Patrick Kennedy, who was the General Foreman, and Douglas Naylon, who was the facility's temporary Senior Highway Engineer. Id. at ¶ 15.[1] In late 2002 or early 2003, Kennedy and Naylon were the subjects of a County investigation regarding "alleged improprieties and illegalities" in the department. Id. at ¶ 24. According to plaintiff, he was harassed by Defendant David Boehm in retaliation for his "friendship and support" of Kennedy and Naylon. Id. at ¶ 28. Specifically, plaintiff alleges that Boehm was "confrontational and intimidating" telling plaintiff that "you are going to do things my way and if you don't, I'm going to come down on you hard, real hard. That's not a threat, it's a promise." Id. at ¶ 32. Plaintiff also claims that Boehm "undermined and harassed" him and "made it impossible for [him] to perform his duties." Id. at ¶ 27.

Plaintiff states that in the spring of 2003 he was placed on paid administrative leave for three weeks, but was "not given any explanation" for it, although he believes it was "part of

[1] Naylon was ultimately terminated in January 2003 for failing a civil service examination and was replaced by Defendant Boehm.

[defendants'] campaign of harassment and intimidation." Id. at ¶ 38-39, 41. During this same time frame, it came to light that in the summer of 2002, plaintiff had allowed the County to "dump some unclean fill that the County was discarding on [his] property, both because it was excess and to repair [his] driveway that had been ruined by the County trucks." Id. at ¶ 21, 23, 38, 48. According to the complaint, Defendant Sentz and a detective from the Sheriff's Department went to plaintiff's home and plaintiff ultimately permitted County equipment to remove the stone from his property. Id. at ¶ 50, 52. According to plaintiff, Sentz notified the news media about the stone removal and told the press that "the County was 'retrieving' County property found [at] the location," thus implying that plaintiff had taken the stone without proper authorization. Id. at 51, 53-54.

From September 10, 2003 through February 2, 2004, plaintiff was on disability leave following shoulder surgery. Id. at ¶ 57. During his leave, plaintiff was reassigned to the Collins plant and returned to work at that location on February 2, 2004. Id. at ¶ 58. Three days later, plaintiff went home "sick due to stress" and has not returned to work since. Id. at ¶ 61, 62.

Based on the foregoing, plaintiff's complaint alleges two causes of action. First, plaintiff alleges that he was harassed and retaliated against for his association with Naylon and Kennedy in violation of the First Amendment. Second, plaintiff alleges that

defendants defamed him under New York State law. Plaintiff now concedes that his state law defamation claim "is subject to dismissal on the grounds set forth in defendants' papers." See Plaintiff's Response (Docket #17) at n.1.[2] Accordingly, this Report and Recommendation concerns only the merits of plaintiff's First Amendment claim.

**Discussion**

Motion to Dismiss Standard: In ruling on a motion under Fed. R. Civ. P. 12(c), the Court employs the standard applicable to a motion made pursuant to Fed. R. Civ. P. 12(b)(6). See Ad-Hoc Committee of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir. 1987). "Accepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party, judgment on the pleadings or dismissal for failure to state a claim should be granted if the moving party is entitled to judgment as a matter of law." Shapiro v. Law Offices of Cohen & Slamowitz, LLP, 2007 WL 958513, *2 (S.D.N.Y. March 28, 2007)(citation omitted). A district court's function on a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint. Kopec v. Coughlin, 922 F.2d 152, 155 (2d Cir. 1991). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."

[2] It is my Report and Recommendation that defendants' motion to dismiss plaintiff's state law defamation claim be granted.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Sheuer, 468 U.S. 183 (1984).

First Amendment Claim: According to his complaint, in late 2002, Erie County Highway Department employees Douglas Naylon and Patrick Kennedy were being investigated by law enforcement authorities for "alleged improprieties and illegalities in the County Highway Department." Complaint at ¶ 24. Thereafter, plaintiff alleges the defendants, acting in concert, commenced a variety of job actions to harass, ridicule, humiliate and harm plaintiff. The gravamen of plaintiff's First Amendment claim is that these job actions were "specifically to retaliate against plaintiff for plaintiff's prior association of with (sic) Former Senior Highway Engineer Douglas Naylon and Former General Foreman Patrick Kennedy." Complaint at ¶ 68. In other words, plaintiff alleges he was subject to retaliation in violation of his First Amendment rights because he was friends with Naylon and Kennedy. Rather than freedom of speech, the retaliation claim alleged in the complaint is based on plaintiff's associational activities. Defendants move to dismiss plaintiff's claim that he was subjected to retaliation for his association with Douglas Naylon and Patrick Kennedy in violation of his First Amendment rights.

The Supreme Court has distinguished between two types of associational freedoms, noting that its decisions

> have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has

> concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion.

Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).

Although it is unclear from the complaint whether plaintiff is alleging an "intimate association" or an "expressive association," I find that he has not satisfied the criteria for either. In terms of an "intimate association," the Supreme Court has recognized that it "must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." Id. at 618.[3] However, the Court has also stated that "we do not think the Constitution recognizes a generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989).

In explaining the difference between relationships that are constitutionally protected and those that are not, the Court observed

[3] "[T]he constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty." Roberts v. United States Jaycees, 468 U.S. 609, 619 (1984).

that

> Family relationships, by their nature, involve deep attachments and commitments . . . [and] are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty. Conversely, an association lacking these qualities - such as a large business enterprise - seems remote from the concerns giving rise to this constitutional protection . . . [thus] [d]etermining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.

Roberts v. United States Jaycees, 468 U.S. at 610.

Here, I find that plaintiff has not set forth the characteristics of an intimate personal relationship with either Kennedy or Naylon sufficient to convey the protections of an "intimate association" under the First Amendment. Rather, plaintiff describes merely a friendly relationship with these two co-workers. Since the Constitution does not recognize "a generalized right of 'social association'" (City of Dallas v. Stanglin, 490 U.S. at 25), it is my Report and Recommendation that to the extent plaintiff is asserting an intimate association under the First Amendment, that such a cause of action be dismissed.

In the context of an "expressive association," it is clear that

"[p]ublic employees do not surrender their First Amendment rights to comment on matters of public interest by virtue of their acceptance of government employment." Cobb v. Pozzi, 363 F.3d at 101. See Oliver v. Cuttler, 968 F.Supp. 83, 89 (E.D.N.Y. 1997)("'[e]xpressive association' protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly and the exercise of religion [and] is otherwise known as "political" associational rights"). Nevertheless, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983). While the determination of whether speech constitutes a matter of public concern "may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003).

The "public concern" requirement applies to both freedom of association claims and freedom of speech claims. Cobb v. Pozzi, 363 F.3d at 102-07.[4] Thus, a public employee bringing a First Amendment

[4] To establish a freedom of speech retaliation claim, plaintiff must demonstrate that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004)(citation and internal quotation omitted).

freedom of association claim must persuade a court that the associational conduct at issue "touches on a matter of public concern." Id. at 102. See also Connick v. Myers, 461 U.S. at 147 (associational conduct pertaining to internal personnel disputes and working conditions is generally held not to involve matters of public concern). Compare Henneberger v. County of Nassau, 465 F.Supp.2d 176, 188 (E.D.N.Y. 2006)(where plaintiff alleged that he was retaliated against for his "political affiliation" court found it was a matter of public concern); with Robinson v. Jones, 2006 WL 726673, *7 (D.Conn. 2006)(plaintiff "indubitably has the right to freely associate with his union" but that association did not implicate a public concern).

In seeking dismissal of the complaint, defendants argue that plaintiff's associational activity does not touch on a matter of public concern. Plaintiff's response to defendants' "public concern" argument is that his "associational activity touches upon the State's interest in prosecution of persons accused of crimes, indisputably a matter of public concern." See Plaintiff's Response to Motion to Dismiss at page 3. Yet plaintiff cites no authority for his argument that friendship and support of co-workers under investigation for criminal activity is "indisputably a matter of public concern." Plaintiff does not allege he was a witness or identified as a witness in any disciplinary proceeding regarding Naylon or Kennedy, possessed evidence favorable to Naylon or Kennedy, or that his association with

Naylon or Kennedy had an impact of any criminal prosecution.[5]

Plaintiff also argues that his friendship with Naylon and Kennedy "tainted" him and caused defendants to falsely accuse him of the crime of stealing County property. See Plaintiff's Response to Motion to Dismiss at page 4. However, this argument, even if true, is insufficient to state a First Amendment claim. See Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir. 2006)(First Amendment's purpose is not to "redress personal grievances," rather there must be "a broader public purpose"); Grillo v. New York City Transit Authority, 291 F.3d 231, 235-36 (2d Cir. 2002)(First Amendment retaliation claims must arise from a matter of public concern and not from complaints made solely to protect a plaintiff's "own rights or to air his personal grievances").

In sum, the associational conduct for which plaintiff alleges retaliation is not based on race, religion, ethnicity, political affiliation or patronage, union membership, or some other community concern or activity that has been construed to meet the "public

---

[5] In a related case, Kennedy v. Lehman, et al, 03-CV-531(RJA), plaintiff Patrick Kennedy was named as a witness in the harassment/retaliation complaint Douglas Naylon filed with the County's EEO Office. Being named by a co-worker as a witness in a job discrimination investigation stands in sharp contrast to the mere "friendship" association Catalano alleges here. Accordingly, in Kennedy, this Court held the associational activities were a matter of public concern entitled to First Amendment protections. Id. See Konits v. Valley Stream Central High School District, 394 F.3d 121, 125 (2d Cir. 2005)(if plaintiff's identification as a witness in a discrimination suit was a motivation for the retaliation she suffered, "then her First Amendment claim would certainly lie").

concern" test.[6] Rather, the associational conduct identified in the complaint is simply plaintiff's friendship with and support of Naylon and Kennedy, two co-workers who were suspected of engaging in criminal activity. Assuming the allegations of the complaint to be true - that plaintiff was subjected to adverse employment actions by the defendants because of his support and friendship with two co-workers who were under criminal investigation - I find that this associational conduct was not a matter of public concern. See Piscottano v. Murphy, 2005 WL 1424394 (D.Conn. June 9, 2005)(applying "public concern test" court denied plaintiff's First Amendment retaliation claim for his social association with a motorcycle group); Robinson v. Jones, 2006 WL 726673 at *4-7 (where plaintiff believed he was being retaliated against because of his friendship with a union steward court held that such an association did not implicate a public concern). Thus, I find that plaintiff's First Amendment cause of action cannot survive defendants' motion to dismiss and it is my Report and Recommendation that defendants' motion to dismiss this claim be granted.

42 U.S.C. § 1983: "Section 1983 'is not itself a source of

[6] This case is distinguishable from the factually related case of Wrobel v. County of Erie, et al., 211 Fed. Appx. 71 (2d Cir. 2007). In Wrobel, the Second Circuit vacated the district court's dismissal of the plaintiff's First Amendment expressive associational claim, finding that the complaint "sufficiently alleges that [plaintiff] was retaliated against for his lack of political affiliation with, or his refusal to pledge his allegiance to, the new Erie County administration." Id. at 72. In contrast to Wrobel, the facts alleged by Catalano do not raise plaintiff's political affiliation as the motive for the defendants' alleged retaliatory conduct.

substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) quoting Baker v. McCollan, 433 U.S. 137, 144, n.3 (1979). Here, without a First Amendment claim, plaintiff does not have a viable constitutional violation to support his cause of action under 42 U.S.C. § 1983. Therefore, it is my Report and Recommendation that the defendants' motion to dismiss the section 1983 claims be **granted**.

## Conclusion

Based on the foregoing, it is my Report and Recommendation that defendants' motion to dismiss the complaint be **granted.**

**SO ORDERED.**

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 27, 2007
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Jonathan W. Feldman
United States Magistrate Judge

Dated: September 27, 2007
Rochester, New York